IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

AMANDA C.,

Plaintiff,

v. CIVIL ACTION NO. 1:25-00387

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

**MEMORANDUM OPINION AND ORDER**

By Standing Order, this action was referred to United States Magistrate Judge Joseph K. Reeder for submission of findings and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Reeder submitted to the court his Proposed Findings and Recommendation ("PF&R") on April 22, 2026, in which he recommended that the court deny plaintiff's request for judgment on the pleadings, grant defendant's request to affirm the decision of the Commissioner, and dismiss this action from the court's docket.

In accordance with 28 U.S.C. § 636(b), the parties were allotted fourteen days plus three mailing days in which to file objections to the PF&R. Plaintiff timely filed objections to the PF&R. See ECF No. 14. Defendant timely filed a response to those objections. See ECF No. 16.

## I. Background

On March 23, 2021, plaintiff Amanda C. (also "claimant") filed an application for Social Security Disability Insurance Benefits, alleging disability beginning on December 1, 2015, due to "Post Traumatic Stress Disorder, Generalized Anxiety Disorder, Panic Disorder, Obsessive Compulsive Disorder, Depression, and Social Anxiety Disorder." Tr. at 18, 201-02, 241. Upon denial of her claim, she sought and obtained an administrative hearing, which was held on March 18, 2024, before Administrative Law Judge ("ALJ") Frank Barletta. See Tr. at 18, 35. At that hearing, plaintiff amended her alleged disability onset date to September 9, 2019. See Tr. at 18, 40. On November May 21, 2024, the ALJ issued a decision finding that plaintiff was not disabled. See Tr. at 18-29. On April 29, 2025, the Appeals Council denied review, thereby making the ALJ's decision final. See Tr. at 1-7. Claimant timely sought judicial review.

## II. Standard of Review

Under § 636(b)(1), a district court is required to conduct a de novo review of those portions of a magistrate judge's report to which a specific objection has been made. The court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and

recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see also Fed. R. Civ. P. 72(b) ("The district court to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.").

Federal courts are not tasked with making disability determinations. Instead, they are tasked with reviewing the Social Security Administration's disability determinations for (1) the correctness of the legal standards applied; and (2) the existence of substantial evidence to support the factual findings. Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980); see also Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is not, however, "[w]itness testimony that's clearly wrong as a matter of fact," "[f]alsified evidence," "[s]peculation," or "conclusory assertions." See Biestek 139 S. Ct. at 1159 (Gorsuch, J., dissenting).

## III. Discussion

Plaintiff's objection relates to the ALJ's treatment of absenteeism as it relates to her ability to work. This is the same argument presented to the magistrate judge and thoroughly addressed in his PF&R. Having reviewed plaintiff's objections de novo, the court concludes that her objection is without merit.

Claimant was seen by John Terry, M.S., a psychologist, for her mental impairments. In December 2023, Terry completed a Mental Residual Functional Capacity ("MRFC") Questionnaire for plaintiff in which he stated that he had been seeing plaintiff for psychotherapy since January 26, 2017. See Tr. at 881-86; 1065-70. Terry indicated that, on average, plaintiff's ailments would cause her to be absent from work more than four days per month. See id.

In his opinion denying benefits, the ALJ discussed Terry's opinion, including his limitation regarding absenteeism, and found it unpersuasive. In so doing, the ALJ found that Terry's opinion "lack[ed] adequate supportive explanation and is inconsistent with evidence of active and alert presentation, adequate dress and grooming, friendly and cooperative behavior, good eye contact, linear speech, orientation in all spheres tested, euthymic or pleasant mood, appropriate and happy affect, logical and coherent thought process, normal thought content, no

auditory or visual hallucinations and average judgment, average insight, no suicidal or homicidal ideation, average immediate and remote memory, average concentration, average pace, and appropriate social functioning." Tr. at 26.

The ALJ's opinion in this regard was supported by substantial evidence. As the PF&R pointed out, "Terry did not specifically explain why Claimant would miss more than four days of work per month" and his opinion did "not tie the checked absenteeism and off-task limitations to detailed clinical findings or sustained objective abnormalities." PF&R at 13. In finding that the ALJ's treatment of Terry was supported by substantial evidence, the PF&R noted:

> [T]he [ALJ's] decision did not overlook absenteeism and off-task evidence. Rather, the ALJ directly addressed the only opinion in the record that quantified those limitations and explained why he did not adopt it. . . .
>
> On this record, the ALJ reasonably concluded that the opinion lacked adequate supportive explanation. . . .
>
> The ALJ's explanation satisfies the governing RFC framework. The assessment must address the medical source opinions and explain why an opinion was not adopted when the RFC conflicts with it. SSR 96-8pm 1996 WL 374184, at *7. Under the regulation applicable to this claim, the most important factors in evaluating medical opinions are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2), (c)(1)-(2). The ALJ addressed both. He found Terry's opinion unsupported because it lacked adequate explanation, and he found it inconsistent with the treatment record as a whole. (Tr. at 26). That is precisely the analysis the regulation requires.

PF&R at 13-14. The court agrees with Magistrate Judge Reeder that the ALJ gave sufficient reasons to discount Terry's absenteeism limitation and the ALJ's decision is supported by substantial evidence.

Plaintiff's objection to both the PF&R analysis in this regard does not really point to any error in the foregoing analysis. Rather, she merely restates the same arguments that she made to the ALJ, the Appeals Council, and the magistrate judge. Her complaint is essentially that the ALJ weighed the evidence incorrectly, should have given more reasons for rejecting Terry's opinion on absenteeism, and failed to consider the number of medical appointments plaintiff had in the past. The court disagrees.

First, as discussed above, the ALJ's decision to discount Terry's absenteeism limitation is supported by substantial evidence. Given his conclusion that Terry's opinion regarding absenteeism was not persuasive, the ALJ did not, and was under no obligation to, include an absenteeism limitation in his hypotheticals to the vocational expert. See Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (stating that "the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations" and that the limitations must be medically established.). Plaintiff's counsel, however, did question the vocational expert about

absenteeism. See Tr. at 65-67. The vocational expert testified that missing 12 days in the first year would preclude employment and that arriving early or leaving late consistently would preclude work. See id. However, as discussed above, the ALJ did not believe that an absenteeism limitation was merited and, therefore, was under no obligation to discuss the issue further.

To the extent plaintiff argues the ALJ did not consider all the evidence, that argument fails. In the Fourth Circuit, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence." Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014)(internal citation and quotation omitted). The ALJ stated that he considered all the evidence of record. See Tr. at 20 ("After careful consideration of the entire record, the undersigned makes the following findings:"). Having so stated, the court should "take h[im] at h[is] word." Reid, 769 F.3d at 865; see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, Case # 4:19-cv-00028-PK, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019) ("While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word.").

Second, plaintiff's assertion that the ALJ had to say more about absenteeism is without merit. Obviously, the ALJ could have given a greater explanation for finding Terry's opinion regarding absenteeism unpersuasive. But that is not what is required. Rather, the ALJ must only give sufficient explanation for the court to conclude that his opinion is supported by substantial evidence. "An ALJ does not have to state on the record every reason justifying a decision." Brault v. Soc. Sec. Admin. Comm'r, 683 F.3d 443, 448 (2d Cir. 2012); see also Alan C. v. Comm'r of Soc. Sec., 1:23-CV-1090 (MAD/DJS), 2024 WL 3715774, at *7 (N.D.N.Y. Aug. 8, 2024) ("If the Court were in the ALJ's shoes, it might have written the decision differently. But that is not the test the Court must apply. The Court must determine if the ALJ committed legal error and whether the decision is based on substantial evidence. There is no statute that requires a greater explanation as to consideration of Plaintiff's subjective statements and third-party statements insofar as the reviewing court can assess the ALJ's evaluation."). A review of the ALJ's reasons and discussion of the evidence leads the court to conclude that the ALJ considered all the evidence and adequately explained his opinion on absenteeism.

Finally, plaintiff insists that she is disabled because of the number of medical appointments in the record. In so doing,

she proceeds on the faulty premise that if the record shows two to four monthly medical appointments in the past, that is prima facie evidence of absenteeism precluding work. Equating medical appointments in the past with absenteeism is a mistake; the claimant has the burden to establish that medical appointments necessary for treatment in the future will result in absenteeism. See Swafford v. Comm'r of Soc. Sec., No. 1:12CV19, 2013 WL 1196590, at *1 (S.D. Ohio Mar. 25, 2013). ("[E]vidence of frequent medical appointments alone is not enough. Instead, there must be evidence such as a medical source opinion about the likelihood of absenteeism caused by the claimant's impairments and the need for treatment during working hours."); Goodman v. Berryhill, CASE No. C17-5115 BAT, 2017 WL 4265685, at *3 (W.D. Wash. Sept. 25, 2017) ("[T]o be disabling, the frequency of medical treatment must be necessitated by the medical condition and be substantiated by the evidence."), aff'd, 741 F. App'x 530 (9th Cir. 2018).

For example, a claimant who shows a pattern of frequent, unexpected trips to the emergency room to treat an ongoing condition likely establishes an absenteeism limitation. See Payne v. Comm'r, Soc. Sec. Admin., Civil No. SAG-14-1015, 2015 WL 412923, at *1 (D. Md. Jan. 29, 2015). Another example is a claimant who shows the need to receive biweekly injections that require several hours to administer. Payne-Hoppe v. Comm'r of

Soc. Sec., No. 1:11-CV-0097, 2012 WL 395472, at *16 (S.D. Ohio Feb. 7, 2012), report and recommendation adopted, No. 1:11-CV-97, 2012 WL 709274 (S.D. Ohio Mar. 5, 2012).

Here, plaintiff did not establish with any reasonable specificity the extent of treatment she needs in the future or that the "mechanics of treatment," see SSR 96-8p, would necessitate missing work. To prove future appointments, she merely points to the medical appointments memorialized in the record and says that the proof of absenteeism is self-evident. To rely on past appointments to predict future appointments, however, there must be evidence that the one is a reliable indicator of the other. See Lara v. Berryhill, No. 4:16-CV-00564-PLC, 2018 WL 1744534, at *3 (E.D. Mo. Apr. 11, 2018).

Courts have consistently rejected the argument that, to establish an absenteeism limitation, all a claimant needs to do is point to a history of medical appointments in the record. See Johnson v. Acting Comm'r of Soc. Sec., No. 24-11459, 2025 WL 671262, *6 (11th Cir. Mar. 3, 2025) ("As to absenteeism, Johnson tells us that she went to twenty-seven medical appointments between August 2, 2019, and November 1, 2021, a span of around twenty-seven months. Johnson avers that 'there is no reflection of the impact of the Johnson's absenteeism in the ALJ's RFC finding or elsewhere in his decision.' But Johnson provides no evidence showing that her medical appointments had to be

scheduled during work hours or that they otherwise prevented her from working."); Blackmon v. Comm'r of Soc. Sec., No. 23-12894, 2024 WL 3495022, *7 (11th Cir. July 22, 2024) (holding that "the ALJ did not err by failing to include Blackmon's absenteeism as a limitation" where "nothing in the record show[ed] that Blackmon could not schedule future appointments outside of work hours, schedule more than one appointment per day, or schedule appointments on her off days, which would minimize the need to miss work"); Barnett v. Apfel, 231 F.3d 687, 691 (10th Cir. 2000) (finding claimant's "current extrapolation of how many days she must have missed from work based on her medical record" was "faulty" because "it assumes she was required to miss entire days of work for each appointment"); Alyssa G.F. v. Bisignano, Case No. 25-cv-3723 (DJF), 2026 WL 2410262, *7 (D. Minn. Aug. 18, 2026) ("Simply counting the number of days Plaintiff underwent infusions or injections that she scheduled is insufficient to establish absenteeism that would preclude gainful employment. . . . A plaintiff cannot satisfy this burden by simply pointing to the frequency of her medical appointments; rather, she must demonstrate that her medical appointments can only be scheduled during working hours and would therefore necessarily result in absenteeism."); James P.K. v. O'Malley, Case No. 23-cv-3883 (KMM/DTS), 2024 WL 5508558, at *6 (D. Minn. Aug. 7, 2024) ("The frequency of medical

appointments . . . without information to substantiate the degree of absenteeism from employment resulting from such appointments, does not justify an absenteeism limitation."), report and recommendation adopted sub nom., James P.K. v. Dudek, 2025 WL 911014 (D. Miss. Mar. 26, 2025) (internal citation and quotation omitted); Jason P.P. v. Kijakazi, Case No. 20-cv-688 (TNL), 2021 WL 4483040, at *16 (D. Minn. Sept. 30, 2021) ("It is Plaintiff's burden to show the frequency of [her] healthcare appointments and any disruption they would cause.") (internal citation and quotation omitted); Leaverton v. Colvin, No. 11-CV-778-FHM, 2013 WL 1316901, at *3 (N.D. Okla. Mar. 29, 2013) ("Plaintiff added up the number of doctor visits and phone calls to his doctor he made over the pendency of this case and argues that number of absences would preclude employment. Nothing in the record suggest an entire day off is necessary for each appointment or that appointments could not be scheduled around hours of employment."); Simpson v. Comm'r of S.S.A., Civil Action No. 1:09-02731-HFF-SVH, 2011 WL 1261499, at *2 (D.S.C. Mar. 31, 2011) ("Even if she has frequent medical appointments, Plaintiff can still have the ability and aptitude necessary to work and perform the above-stated tasks and those similar to them. Moreover, the concern about absences due to appointments is speculative. Plaintiff's speculation that she will miss work frequently for medical appointments is insufficient to

demonstrate a limitation on her physical or mental ability to perform basic work activities.”); Stone v. Berryhill, No. 17-CV-3193, 2018 WL 5300381, at *19 (C.D. Ill. Oct. 24, 2018) (“The ALJ is not required to speculate. Stone is speculating on what she would have done had she been working. If Stone had been working, she might have scheduled her medical appointments on her days off or combined appointments. No one knows. No one knows because this argument is all speculation. The ALJ did not err in omitting such speculation from her decision. If numbers of doctors' visits alone could establish disability, claimants would only need to schedule enough visits.”); Martin v. Berryhill, CIVIL NO. 7:16-CV-260-KKC, 2018 WL 1571906, at *4 (E.D. Ky. Mar. 30, 2018) (“Martin claims the ALJ failed to properly consider her absenteeism necessitated by her doctor's appointments. But Martin has not identified any evidence on the record that the length of these appointments would require her to miss work.”); Jeffries v. Berryhill, No. 4:16 CV 18 JMP, 2017 WL 365439, at *6 (E.D. Mo. Jan. 25, 2017) (“Although Plaintiff argues that it is ‘incontrovertible’ that she will miss numerous days, the record does not support this argument and substantial evidence supports the ALJ’s RFC determination. At best, Plaintiff proved how many times she has visited a doctor, but she did not show that each doctor's visit would result in her missing an entire day of work.”); Mullin v. Colvin, No. 14-3217-

CV-S-REL-SSA, 2015 WL 5096028, at *14 (W.D. Mo. Aug. 27, 2015) ("In this case, there is no evidence that plaintiff would be unable to schedule multiple medical appointments on the same day or schedule appointments before or after her normal work hours. There is no evidence that plaintiff's impairments or treatment will likely require her to miss 10 to 14 full days of work per year as plaintiff suggests in her brief. As a result, plaintiff's arguments on this basis are without merit.").

Plaintiff makes much of the total number of times she saw Terry over a seven-year period. See ECF No. 14 at 2 ("The record establishes that Plaintiff presented to Terry for counseling for a total of 151 visits for psychotherapy over the period of January 2017 to December 2023."). However, she does not discuss the character of those visits or, critically, why future visits would require her to miss a full day of work.

The record shows that plaintiff saw Terry approximately two to four times a month. See Tr. at 345-58, 1269-71. Those visits ranged anywhere from 16 minutes, see Tr. at 813, to up to an hour. This is consistent with plaintiff's testimony at the hearing.

> Q: When you visit with [Terry], how often are you with - - how long are you with him when you see him?
>
> A: Usually 45 minutes to an hour and sometimes it goes over the hour, but normally 45 minutes to an hour.

Q: And how often do you see him in an average month?

A: Oh, four times a month and once a week.

Q: Okay, that's more recently. In the past was it at that level or has it changed as time has gone by?

A: It's became [sic] more frequent. I was seeing him twice a month.

Q: Okay.

A: - - and now we've upped it to four times a month.

Tr. at 44.

However, more is required. "If the sheer number of medical visits were sufficient on its own, claimants could manufacture their own disabilities simply by going to the doctor as often as possible for any or no reason[.]" Hoppa v. Colvin, No. 12-cv-847-bbc, 2013 WL 5874639, at *5 (W.D. Wisc. Oct. 31, 2013).

Furthermore, the record reflects that some of claimant's visits were telehealth and/or phone visits and did not require her to travel to Terry. See Tr. at 1269-71. She does not explain why those options would not be available for future appointments. In other words, there was no evidence before the ALJ to indicate that continued counseling sessions with Terry would require her to miss a full workday. See Combs v. Kijakasi, 69 F.4th 428, 436 (7th Cir. 2023) (rejecting the plaintiff's argument that the ALJ "should have considered the amount of time that she would have missed work . . . . due to her multiple procedures and appointments" when the record showed

that some appointments "lasted only ten minutes" and "it [was] difficult to see how [her appointments] would have necessitated a full day off work"); Pryor v. Comm'r of Soc. Sec., CASE No. 14-13325, 2015 WL 12683977, at *7 (E.D. Mich. Aug. 21, 2015) ("Pryor has not established any reason to think that he is unable to attend physical therapy sessions after work, on the weekends, during lunch, or on some other schedule."), report and recommendation adopted, 2015 WL 6735336 (E.D. Mich. Nov. 4, 2015); Brock v. Astrue, No. 4:07-CV-00632-NKL, 2008 WL 4104551, at *16 (W.D. Mo. Aug. 287, 2008) ("Further, the fact that a claimant must attend regular healthcare appointments does not necessarily indicate that she cannot work; there is nothing in the record to indicate that Brock could not schedule her appointments around her work schedule.").

There was no error in the PF&R; the ALJ's decision that plaintiff was not disabled is supported by substantial evidence.

## IV. Conclusion

For the reasons set forth above, the court **OVERRULES** plaintiff's objections. The court **DENIES** plaintiff's motion for judgment on the pleadings; **GRANTS** defendant's request to affirm his decision; **AFFIRMS** the final decision of the Commissioner; and **DISMISSES** this case from the court's active docket.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to all counsel of record and any unrepresented parties.

**IT IS SO ORDERED** this 28th day of September, 2026.

ENTER:

David A. Faber
Senior United States District Judge